**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| JAR LABORATORIES LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 12 C 7134 ) ) Judge Bucklo |
| GREAT AMERICAN E&S INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) ) |

**JAR LABORATORIES' MOTION FOR SUMMARY JUDGMENT**

Plaintiff JAR Laboratories LLC ("JAR"), pursuant to Federal Rule of Civil Procedure, asks the Court to enter summary judgment in its favor on Counts I and II of its complaint and Counts I through VII of the counterclaim filed by Great American E&S Insurance Company ("GAIC").

**INTRODUCTION**

JAR's complaint seeks a declaration that GAIC owes JAR a duty to defend or indemnify JAR in a false advertising suit filed by Teikoku Pharma USA, Inc. (the "Underlying Action"), and alleges that GAIC has breached that duty. GAIC claims that the conduct alleged in the Underlying Action is not an "advertising injury" covered by JAR's policies, and that coverage is eliminated by three policy exclusions, including one titled "Exclusion of Claims and 'Suits' Alleging Infringement of Intellectual Property" (the "IP Exclusion"). However, GAIC disregards the inconvenient fact that there is no intellectual property involved in the Underlying Action. As long as there is the potential for coverage, an insurer

1

must defend its insured. GAIC already conceded that there is a potential for coverage: After filing its own declaratory judgment action (which also relied on the IP Exclusion), GAIC agreed to assume the defense of the Underlying Action, only to change its mind for no discernible reason.

## FACTS

The plaintiff in the Underlying Action, Teikoku Pharma USA, Inc. ("TPU"), imports the Lidoderm® patch, a prescription-only patch that contains lidocaine. (GAIC Answer, Affirmative Defenses and Counterclaim (Doc. No. 6), attached as Exhibit 1, at App 60, ¶ 15, App 78, ¶ 15)[1] TPU alleges that Lidoderm®'s formulation makes it more effective and potentially less irritating than other topical lidocaine formulations. (App 60, ¶ 14; App 78, ¶ 14)

TPU's complaint alleges that JAR was formed in 2011 to develop and sell over-the-counter topical analgesics. Its initial product, LidoPatch®, is a non-prescription adhesive patch containing lidocaine. (App 59-60, ¶¶ 9, 16)

### A. JAR's GAIC Policies

GAIC issued two liability policies to JAR, both effective from December 1, 2011 to December 1, 2012. (App 5, ¶ 10; Policy No. PL-4432835-00 (the "Primary Policy"), App 97-168; Policy No. XS 4432836-00 (the "Excess Policy"), App 170-198) The GAIC policies provide coverage for, among other things, "personal and advertising injury" liability. "Personal and advertising injury" is defined as:

---

[1] For ease of reference, the pages of the exhibits to the Local Rule 56.1 statement accompanying this motion have been sequentially numbered from App 1 through App 236.

2

> [I]njury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
> \*   \*   \*d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services….

(App 5-6, ¶ 11; App 122, ¶ 14)

The policy form of the Primary Policy contains an exclusion for "Infringement of Copyright, Patent, Trademark or Trade Secret," which excludes:

> "Personal and advertising injury" arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights. Under this exclusion, such other intellectual property rights do not include the use of another's advertising idea in your "advertisement."

(App 112, ¶ i) However, JAR's Primary Policy contains two endorsements concerning intellectual property infringement. An "Advisory Notice to Policyholders, titled "Exclusion of Claims and 'Suits' Alleging Infringement of Intellectual Property," reads:

> This Notice provides information concerning the following new endorsement, which applies to your renewal policy being issued by us:
>
> **Exclusion of Claims and 'Suits' Alleging Infringement of Intellectual Property**
>
> **AES 3258 07 11**
>
> This endorsement replaces the current Intellectual Property Exclusion Amendment in your policy with a revised exclusion titled **Exclusion of Claims and "Suits" Alleging Infringement of Intellectual Property**. The revised exclusion reinforces the scope of the intellectual property exclusion by barring all coverage where any part of a claim or suit arises out of any actual, alleged, or threatened misappropriation, infringement, or violation of any intellectual property right or law.

(App 138)(emphasis in original).

3

The revised "Exclusion of Claims and Suits Alleging Infringement of Intellectual Property" identified in the Advisory Notice to Policyholders states, in pertinent part:

> I. **Coverage B – Personal and Advertising Injury Liability, 2. Exclusions, I. Infringement of Copyright, Patent, Trademark or Trade Secret**, is deleted and replaced by the following:
>
> **i. Claim or Suit Alleging Infringement of Intellectual Property**
>
> (1) Any claim or "suit" that alleges "personal and advertising injury" arising out of any actual, alleged, or threatened misappropriation, infringement, or violation of any one or more of the following rights or laws:
>
> (a) copyright;
>
> (b) patent;
>
> (c) trademark;
>
> (d) trade name;
>
> (e) trade secret;
>
> (f) trade dress;
>
> (g) service mark;
>
> (h) slogan;
>
> (i) service name;
>
> (j) claim of authorship;
>
> (k) other right to or law recognizing an interest in any expression, idea, likeness, name, style of doing business, symbol, or title;
>
> (l) laws or regulations concerning piracy, unfair competition, unfair trade practices, or other similar practices; or
>
> (m) any other intellectual property right or law.
>
> This exclusion applies whether such misappropriation, infringement, or violation is committed in your "advertisement" or otherwise.

> (2) Any other "bodily injury," "property damage," "personal and advertising injury," or medical expenses alleged in a claim or "suit" that also alleges any misappropriation, infringement, or violation excluded by paragraph (1) of this exclusion.

(App 136-137)(emphasis in original).

The Primary Policy includes two other exclusions upon which GAIC relies. The first, titled "Quality or Performance of Goods – Failure to Conform to Statements," purports to exclude from coverage "'[p]ersonal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'" (App 20-23, Fifth and Eighth Affirmative Defenses; App 112, ¶ g) The second is titled "Material Published Prior to Policy Period," and excludes liability for "'[p]ersonal and advertising injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period." (App 22, Seventh Affirmative Defense; App 111, ¶ c)

### B. The Underlying Action and Denial of Coverage

TPU's initial complaint in the Underlying Action was based on statements made by JAR in a February 2012 press release introducing LidoPatch®:

> JAR Laboratories announces the launch of their new over-the-counter pain relief patch, Lidopatch®, which contains the same active ingredient as the leading prescription patch. This new product will be ready to ship to distributors and retailers in mid-February and is poised to become a major product in the topical analgesic category. With its proven pain relieving active ingredients, lidocaine, LidoPatch® can provide relief for minor pain associated with: arthritis, simple backache, bursitis, tendonitis muscle strains and sprains. Like the prescription brand, LidoPatch® will provide relief for up to 24 hours. The patches are large, 4"x5 1/2" (10cm x 14cm), and can be trimmed to fit.

(App 61, ¶ 18) At about the same time, JAR announced LidoPatch® on its website, www.lidopatch.com, displaying a picture of the proposed packaging for the LidoPatch® product. (App 62, ¶ 19)

TPU filed suit on March 14, 2012 (Civil Action No. 12 C 1864), alleging that JAR's advertising comparing LidoPatch® to Lidoderm® was false, in violation of the Lanham Act, 15 U.S.C. § 1125(a). (App 9, ¶ 18) TPU alleged that JAR's comparison misleadingly conveyed the message that LidoPatch® was the same product as Lidoderm®, when LidoPatch® in fact has a different formulation that is likely to affect lidocaine absorption, adhesiveness and skin irritation. (App 63, ¶ 21) **TPU did not and has not alleged any infringement of intellectual property.**

JAR promptly notified GAIC of TPU's complaint and requested a defense. (App 10, ¶ 19) Initially, GAIC refused and filed suit for a declaratory judgment concerning its obligations under the GAIC Policies. (Civil Action No. 12 C 3303, filed May 2, 2012)

In its responses to JAR's interrogatories, TPU added further detail to its claim. Counsel for JAR forwarded TPU's interrogatory responses to counsel for GAIC, pointing out TPU's assertions that JAR had made additional disparaging statements about TPU's Lidoderm® product. (July 11, 2012 email from M. Holzhall to S. Baldwin, attached as Exhibit 2, App 200-217) On August 14, 2012, counsel for GAIC advised JAR's counsel that GAIC had reconsidered its denial of coverage and would assume the defense of the Underlying Action under a reservation of rights. (App 12, ¶ 23; App 70) Later that day, GAIC's declaratory

6

judgment action was dismissed without prejudice at GAIC's request. (App 12, ¶ 23) Clearly GAIC recognized that there was a potential for coverage of the Underlying Action.

On August 22, 2012, even though circumstances had not changed, counsel for GAIC advised JAR's counsel that despite its agreement to assume the defense and dismissal of its declaratory judgment action, GAIC had changed its mind and was again denying any obligation to defend.

On August 28, 2012, counsel for TPU advised JAR's counsel that TPU would seek to file an amended complaint in the Underlying Action. (App 13, ¶ 25) The proposed amended complaint incorporated the allegations of disparagement disclosed in its interrogatory responses, reiterated TPU's federal false advertising claim, and added state law claims based upon the same allegations of false advertising as those giving rise to TPU's federal claim. (App 79-84, ¶¶ 19-29) None of the additional allegations implicated any intellectual property rights. Counsel for JAR forwarded the proposed amended complaint to GAIC's counsel, and on August 31, 2012, GAIC formally denied coverage for the Underlying Action, expressly relying on the "Exclusion of Claims and 'Suits' Alleging Infringement of Intellectual Property." (App 13-14, ¶ 26; August 31, 2012 letter from S. Baldwin to M. Holzhall, attached as Exhibit 3, App 233)

TPU filed its amended complaint in the Underlying Action on September 5, 2012. (App 4, ¶ 27) Neither the initial complaint nor the amended complaint alleged infringement or misappropriation of any of TPU's intellectual property. (App 57-67; App 75-95) Neither the "Exclusion of Claims and 'Suits' Alleging

7

Infringement of Intellectual Property" nor any of the other exclusions upon which GAIC relies eliminates the potential for coverage under the GAIC Policies.

## ARGUMENT

Summary judgment is appropriate where the pleadings, depositions, and admissions on file, together with any affidavits and exhibits, when viewed in the light most favorable to the nonmoving party, indicate that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The construction of an insurance policy and determination of the parties' rights and obligations under the policy are questions of law that suitable for summary judgment. *Crum & Forster Managers Corp. v. Resolution Trust Corp.,* 156 Ill. 2d 384, 391, 620 N.E.2d 1073, 1077 (1993).

### A.     Construction Standards

Courts should interpret insurance agreements as complete documents, not isolated parts. *Knoll Pharmaceutical Co. v. Automobile Ins. Co. of Hartford*, 210 F. Supp. 2d 1017, 1022 (N.D. Ill. 2002). When possible, the agreement should be construed so that all provisions are given effect and are consistent and harmonious. *Id.*

However, if in context a policy provision is subject to more than one reasonable interpretation, it is ambiguous. *Id.* The insurer is the drafter of the policy and has the power to make the language clear. *Id.* Furthermore, the intent of an insurance contract is to provide coverage to the insured, and any ambiguity jeopardizing coverage should therefore be consistent with the insured's intent. *Id.* Accordingly, insurance policies must be liberally construed in favor of coverage,

and where an ambiguity exists in the insurance contract, it is resolved in favor of the insured and against the insurer. *United Services Automobile Ass'n v. Dare,* 357 Ill. App. 3d 955, 963-64, 830 N.E.2d 670, 678 (1st Dist. 2005). Similarly, any provisions in an insurance policy that limit or exclude coverage are also construed liberally in favor of the insured and against the insurer. *Id.* at 964, 830 N.E.2d at 678; *see also American Economy Ins. Co. v. DePaul University,* 383 Ill. App. 3d 172, 890 N.E.2d 582 (1st Dist. 2008).

As an initial matter, GAIC's request for a declaratory judgment as to its duty to indemnify is premature. It is well-settled that the issue of an insurer's duty to indemnify its insured is not ripe until the underlying litigation ends. *Travelers Ins. Co. v. Penda Corp.,* 974 F.2d 823, 833 (7th Cir.1992); *United Nat'l Ins. Co. v. Dunbar & Sullivan Dredging Co.,* 953 F.2d 334, 338 (7th Cir.1992). The duty to indemnify is triggered only when the insured becomes legally obligated to pay damages in the underlying action. *Avemco Ins. Co. v. Acer Enters., Inc.,* 796 F. Supp. 343, 346–47 (N.D. Ill. 1992).

An insurer's duty to defend is much broader than its duty to indemnify. *Crum & Forster Managers Corp.,* 156 Ill. 2d at 393–94, 620 N.E.2d at 1079. Any doubt with regard to the insurer's duty to defend must be resolved in favor of the insured. *Dare,* 357 Ill. App. 3d at 963, 830 N.E.2d at 678.

To determine the insurer's duty to defend its insured, a court looks to the allegations of the underlying complaint. If the underlying complaint alleges facts potentially within policy coverage, the insurer must defend the insured even if the allegations are groundless, false, or fraudulent. *Northbrook Property & Casualty*

9

*Co. v. Transportation Joint Agreement,* 194 Ill. 2d 96, 98, 741 N.E.2d 253, 254 (2000). The complaint need not use language affirmatively bringing the claims within the scope of the policy, because "[t]he question of coverage should not hinge on the draftsmanship skills or whims of the plaintiff in the underlying action." *Illinois Emcasco Insurance Co. v. Northwestern National Casualty Co.,* 337 Ill. App. 3d 356, 361, 785 N.E.2d 905, 909 (2003) (quoting *International Insurance Co. v. Rollprint Packaging Products, Inc.,* 312 Ill. App. 3d 998, 1007, 728 N.E.2d 680 (2000)). An insurer may refuse to defend only when the allegations of the underlying complaint clearly demonstrate that the claim is outside the policy's coverage. *Id.* at 360, 785 N.E.2d at 908.

### B. TPU's Complaints Have Alleged an "Advertising Injury" Within the Scope of the Primary Policy

The Primary Policy defines an "advertising injury" to include "[o]ral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services…." (App 5-6, ¶ 11, App 122, ¶ 14) Disparage means "to discredit or bring reproach upon by comparing with something inferior." *Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*, 214 Fed. Appx. 596, 2007 WL 186247 (7th Cir. 2007)(applying Wisconsin law)(quoting *Webster's Third New International Dictionary (unabridged)* 653 (1981)); *see also Black's Law Dictionary* 483 (7th ed.1999) (defining disparage as "[t]o dishonor (something or someone) by comparison" or "[t]o unjustly discredit or detract from the reputation of (another's property, product, or business)"). "A misleading comparison to a specific competing product necessarily diminishes that product's value in the minds of the

10

consumer." *McNeilab, Inc. v. Am. Home Prods. Corp.,* 848 F.2d 34, 38 (2d Cir.1988).

From the outset, TPE has complained that JAR's comparison of Lidoderm® and LidoPatch® misleadingly portrayed Lidoderm® as an overpriced equivalent of the allegedly inferior LidoPatch®, resulting in "diminished goodwill of Lidoderm®," among other things. (App 65, ¶ 29; App 86-93, ¶¶ 38, 44, 57, 62, 67, 73) This falls squarely within the definition of "advertising injury" in the GAIC Policies.

### C. The IP Infringement Exclusion Does Not Bar Coverage

GAIC contends that the IP Infringement Exclusion, which purports to prohibit coverage for infringement of intellectual property or "laws or regulations concerning piracy, unfair competition, unfair trade practices, or other similar practices; or * * * any other intellectual property right or law," excludes claims, such as those advanced by TPU, that do not allege infringement of intellectual property rights but are instead based solely on allegedly false or disparaging advertising.

GAIC's position is belied by the policy itself. First, the exclusion is titled "Exclusion of Claims and 'Suits' Alleging Infringement of Intellectual Property." The provision it replaced excluded injury "arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights." (App 112, ¶ i) As explained by the Advisory Notice to Policyholder accompanying the revised IP Infringement Exclusion, "The revised exclusion reinforces the scope of the intellectual property exclusion by barring all coverage where any

11

part of a claim or suit arises out of any actual, alleged, or threatened misappropriation, infringement, or violation of any intellectual property right or law." (App 138)

Furthermore, at least one court has already rejected GAIC's interpretation. In *Align Technology, Inc. v. Federal Ins. Co.*, 673 F. Supp. 2d 957 (N.D. Cal 2009), the court interpreted the phrase "other judicial or statutory law concerning piracy, unfair competition or other similar practices" as used in a similar intellectual property infringement exclusion, and concluded that it was limited to claims alleging infringement or misappropriation of intellectual property, rather than claims based upon defamation or disparagement. The court noted that the policy used the term "unfair competition" in the context of defining an "intellectual property law or right," and explained:

> Thus, the term "unfair competition" appears in the context of "piracy, unfair competition or other similar practices." "Piracy," when not referring to violence at sea, refers to "[t]he unauthorized and illegal reproduction or distribution of materials protected by copyright, patent, or trademark law." *Black's Law Dictionary* (8th ed. 2004). Similarly, the laws and rights listed in other bullet points all involve protection for expressions, ideas, likenesses, names, styles of doing business, trade dress, and so on-all forms of intellectual property that may be misappropriated. This is consistent with the common law tort of unfair competition, which includes "passing off" and analogous acts "by which a person exploits a competitor's reputation in the market." *Bank of the West,* 2 Cal.4th at 1263, 10 Cal. Rptr. 2d 538, 833 P.2d 545 (citing Restatement (First) Torts §§ 711-743 (1938)).

*Id.* at 970.

The *Align Technology* court ruled that the exclusion did not apply to a state law claim for disparagement, stating, "To apply such a broad definition would stretch the term far beyond its context embedded within an exclusion for

'intellectual property,'" and to adopt such a construction would eviscerate coverage, frustrate the insured's reasonable expectations, and violate the rules of construing insurance contracts, and particularly exclusions, in favor of the insured. *Id.* at 971.

Here, that reasoning is all the more compelling in light of the other provisions of the Primary Policy. First, the policy covers "advertising injury," which is defined in part as "[o]ral or written publication, in any manner, of material that … disparages a person's or organization's goods, products or services." (App 122, ¶ 14) To extend the interpretation of "unfair competition" in the IP Exclusion beyond its traditional meaning of passing off to include allegedly disparaging advertising would nullify that coverage for advertising injury.

Second, the Primary Policy carries a separate exclusion for "'Personal and advertising injury' arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your 'advertisement.'" (App 112, ¶ g) If the IP Exclusion were interpreted to bar coverage for the insured's misrepresentation of its own goods (a common element of false advertising actions), then the exclusion for failure of goods to conform would be rendered superfluous, violating the canon of construction that each provision of a contract be given effect.

### D. The "Prior Publication" Exclusion Does Not Bar Coverage

GAIC contends that it has no duty to defend or indemnify JAR in the Underlying Action, because certain statements complained of by TPU were made prior to the policy date of December 1, 2011.

13

Both TPU's initial complaint and its amended complaint focus on allegedly defamatory statements made in February 2012, well within the policy term. (App 61-63, ¶¶ 18-20; App 80-84, ¶¶ 20-29) As there is certainly the potential for coverage, GAIC is not relieved of its obligations.

### E. The "Quality of Goods" Exclusion Does Not Eliminate Coverage

Finally, GAIC contends that it owes no duty to defend because the allegedly false statements concerned only the quality of JAR's LidoPatch® product, and therefore fall within the exclusion for claims arising from the failure of the product to conform with the statements made in JAR's advertising. TPU, however, asserts that its Lidoderm® product has been disparaged and its goodwill damaged by statements implying that Lidoderm® is equivalent to the allegedly inferior LidoPatch® product. (App 65, ¶ 29; App 86-93, ¶¶ 38, 44, 57, 62, 67, 73; App 249) As the complained-of statements are not confined to the qualities of JAR's product, but allegedly disparage TPU's product, the potential for coverage remains, and GAIC owes JAR a duty to defend the Underlying Action.

**CONCLUSION**

For the foregoing reasons, JAR Laboratories LLC asks that the Court enter summary judgment in its favor on Counts I and II of its complaint and Counts I through VII of the counterclaim filed by Great American E&S Insurance Company, award JAR its costs and fees, and grant such other relief the Court deems appropriate.

                Respectfully submitted,

                /s/ Marianne C. Holzhall
                Annette M. McGarry (#6205751)
                  amm@mcgarryllc.com
                Marianne C. Holzhall (#6204057)
                  mch@mcgarryllc.com
                McGarry & McGarry, LLC
                120 North LaSalle Street, Suite 1100
                Chicago, IL 60602
                (312) 345-4600

                Attorneys for JAR Laboratories LLC