## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAR LABORATORIES LLC, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 12 C 7134 |
| | ) Judge Bucklo |
| GREAT AMERICAN E&S INSURANCE COMPANY, | ) |
| Defendant. | ) |

### JAR LABORATORIES' REPLY IN SUPPORT
### OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff JAR Laboratories LLC ("JAR") submits this reply in further support of its motion for summary judgment on Counts I and II of its complaint and on Counts I through VII of the counterclaim filed by Great American E&S Insurance Company ("GAIC").

### INTRODUCTION

GAIC realized that there was a potential for coverage of the underlying TPU Action, as it agreed to defend JAR, if only for a short time. Now to explain its reversal, it merely says, cryptically, "GAIC should not have done so, as it had no duty to defend," as if it were some sort of accident. (Response Br., Doc. No. 29, at 1, n. 1) Having gone to the trouble of denying JAR's claim, then filing and voluntarily dismissing its own declaratory judgment action, GAIC's agreement to assume the defense cannot be considered a slip of the tongue. Other than its mumbled "shouldn't have done it," GAIC has failed to provide any explanation for its troubling behavior.

1

Offering no argument in response, GAIC apparently concedes that the issue of its duty to indemnify is not yet ripe, as there has been no determination of liability in TPU Action. Finally, the undisputed facts demonstrate that GAIC owes JAR a duty to defend the TPU Action, and that GAIC has breached that duty.

## **ARGUMENT**

GAIC does not dispute the rules governing an insurer's duty to defend. If the underlying complaint alleges facts potentially within policy coverage, the insurer must defend the insured, even if the allegations are groundless, false, or fraudulent. *Northbrook Property & Casualty Co. v. Transportation Joint Agreement,* 194 Ill.2d 96, 98, 741 N.E.2d 253, 254 (2000). In determining an insurer's duty to defend, the allegations of the underlying complaint and the terms of the insurance contract are construed liberally in favor of the insured. *Northfield Ins. Co. v. City of Waukegan*, 2012 WL 5870704 *3 (7th Cir. 2012). Any doubt with regard to the insurer's duty to defend must be resolved in favor of the insured. *United Services Automobile Ass'n v. Dare,* 357 Ill.App.3d 955, 963, 830 N.E.2d 670, 678 (1st Dist. 2005).

    **A.**    **TPU's Complaints Allege Disparagement, an "Advertising Injury" Covered by the Primary Policy.**

GAIC scoffs at the Seventh Circuit's resort to dictionary definitions of the word "disparage," as if courts construing insurance contracts must first master and then translate the secret language of the insurance industry. On the contrary, a court interpreting terms that are not defined by the policy "must afford them their plain, ordinary, and popular meanings." *Valley Forge Ins. Co. v. Swiderski*

2

*Electronics, Inc.*, 223 Ill.2d 352, 366, 860 N.E.2d 307, 316 (2006). The Illinois Supreme Court has instructed that "[t]o do so, we look to their dictionary definitions." *Id.* That is precisely what the court did in *Acme United Corp. v. St. Paul Fire & Marine Ins. Co.*, 214 Fed. Appx. 596, 2007 WL 186247 (7th Cir. 2007)(applying Wisconsin law), defining "disparage" as "to discredit or bring reproach upon by comparing with something inferior."

The Seventh Circuit is not alone in turning to dictionaries to construe insurance policy terms. In *Safety Dynamics, Inc. v. General Star Indem. Co.*, 475 Fed.Appx. 213, 2012 WL 3066577 (9th Cir. 2012)(unpublished decision), the court used the dictionary definition of "disparagement" to find a duty to defend a false advertising suit, stating:

> Disparagement is "[a] derogatory comparison of one thing with another," or "[a] false and injurious statement that discredits or detracts from the reputation of another's ... product." Black's Law Dictionary 538 (9th ed.2009). The complaint alleges that Safety Dynamics's false claims about its own product had the result of misleading consumers because it made Safety Dynamics's product look better versus ShotSpotter's. This is sufficient to state a covered claim for product disparagement, at least in the context of the duty to defend.

*Id.* at 214, 2012 WL 3066577 *1.

Here, TPU's complaints allege that JAR misleadingly portrayed Lidoderm® as a slower-acting, overpriced equivalent of LidoPatch® that will not be covered by insurance, resulting in "diminished goodwill of Lidoderm®." (App. 63, 65, ¶¶ 20, 29; App. 81-84, 86-87. 90-93, ¶¶ 23, 28, 38, 44, 57, 62, 67, 73) GAIC attempts to distinguish *Acme United* by pointing out that there, the insured had claimed its product was superior to that of the plaintiff in the underlying case,

3

whereas here TPU alleges that JAR has advertised its inferior product as equivalent to the Lidoderm® patch. There is no practical distinction between saying, "My product is better than yours," and saying, "My [allegedly] inferior product is equal to yours." In each case, there is a disparaging comparison between the two products. Even *BASF AG v. Great American Assur. Co.*, 522 F.3d 813 (7th Cir. 2008), upon which GAIC relies, recognized that an insured's advertisement of its prescription drug as having no known equivalents disparaged producers of competing drugs that were, in fact, equivalent. *Id*. at 820-21. Disparagement, in the context of advertising injury, can take many forms and need not meet the requirements of a common-law claim for disparagement. *Winklevoss Consultants, Inc. v. Federal Ins. Co.,* 11 F. Supp. 2d 995, 1000 (N.D. Ill. 1998).

TPU's alleged injury is an "advertising injury" as defined by the primary policy.

### B. The IP Infringement Exclusion Does Not Bar Coverage.

Exclusions in the policy must be construed strictly, and in JAR's favor. GAIC argues that the IP Exclusion should be expanded beyond claims for infringement of intellectual property to exclude claims for false advertising. GAIC should revisit the language of its policy and exclusions, which dictates otherwise.

The exclusion is titled "Exclusion of Claims and 'Suits' Alleging Infringement of Intellectual Property." (App. 136) Unlike many other contracts, the primary policy lacks any provision that the headings or titles of sections may be

4

disregarded in construing the agreement. Therefore, the title of the IP Exclusion tells the reader that it excludes claims for intellectual property infringement.

Furthermore, the IP Exclusion proceeds from the specific to the general in reciting excluded claims. It begins with a list of eleven particular intellectual property rights; moves to the portion upon which GAIC relies, "laws or regulations concerning piracy, unfair competition, unfair trade practices, or other similar practices"; and ends with a catchall exclusion of claims arising from "any *other* intellectual property right or law." (App. 136)(emphasis supplied). Sandwiched between a list of specific intellectual property rights and the phrase "any *other* intellectual property right or law," the phrase "piracy, unfair competition, unfair trade practices or other similar practices" must be construed to refer to infringement of intellectual property rights.

Furthermore, the policy includes the Advisory Notice to Policyholder, which states, "The revised exclusion reinforces the scope of the intellectual property exclusion by barring all coverage where any part of a claim or suit arises out of any actual, alleged, or threatened misappropriation, infringement, or violation of any intellectual property right or law." (App. 138) While GAIC points out that the notice provides that it is not part of the insurance contract,[1] the Advisory Notice endorsement concisely explains GAIC's intent in revising the exclusion, and certainly sheds light on GAIC's pre-litigation interpretation of the ambiguous revamped exclusion.

---

[1] Curiously, the Advisory Notice to Policyholder (Form AES211, ed. 07/11) is included among the forms and endorsements that "are attached to and are a part of this policy." (App. 98)

Everything in GAIC's policy dictates limiting the exclusion to claims for infringement of intellectual property rights, and that is supported by other cases. For example, in *Safety Dynamics, Inc.*, 475 Fed.Appx. 213, 2012 WL 3066577, the court refused to apply a similar exclusion to a false advertising claim, stating

> The "unfair competition" exclusion does not apply because it falls under a heading referencing IP claims, indicating that the "unfair competition" claim must relate to IP law in order to be excluded under this section. For example, the tort of "passing off" one's product as a competitor's is an IP-related unfair competition claim. [citation omitted]. At the very least, the heading renders the exclusion ambiguous, as it is an illogical placement for such an exclusion if indeed it has nothing to do with "intellectual property rights violations." We must construe any ambiguity against the insurer.

*Id.* at 214, 2012 WL 3066577 *2. *See also Align Technology, Inc. v. Federal Ins. Co.*, 673 F.Supp.2d 957 (N.D. Cal 2009)

None of the "judicial precedent" upon which GAIC relies is on point. In each case, the "unfair competition" at issue was infringement of an intellectual property right. *See Two Pesos Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992)(trade dress infringement); *NuPulse, Inc v. Schleuter Co.,* 853 F.2d 545 (7th Cir. 1988)(trademark infringement); *S.B.C.C., Inc. v. St. Paul Fire & Marine Ins. Co.*, 186 Cal. App. 4th 383 (2010)(trade secret misappropriation); *Ventana Med. Syst., Inc. v. St. Paul Fire & Marine Ins. Co.*, 709 F. Supp. 2d 744 (D. Ariz. 2010)(patent infringement); *Molecular Bioproducts, Inc. v. St. Paul Mercury Ins. Co.*, 2003 U.S. Dist. LEXIS 27903 (S.D. Cal. 2003)(patent infringement).

TPU alleged false advertising, and not infringement of any patent, trademark, trade dress, copyright, trade secret or any other form of intellectual property. Nevertheless, ignoring the rule that the underlying complaint must be

6

construed in JAR's favor, GAIC attempts to fashion a "passing off" claim from TPU's false advertising suit. The TPU Action, however, does not and cannot involve passing off. Passing off occurs when one party puts another's trademark on its own goods. *Bretford Mfg., Inc. v. Smith System Mfg. Corp.*, 419 F.3d 576, 580 (7th Cir. 2005). Nowhere has TPU alleged that JAR has sold its own product under the Lidoderm® mark. In fact, nowhere has TPU alleged that it has any rights in the Lidoderm® mark, because TPU has no rights in the Lidoderm® trademark in the United States. (Declaration of Ichiro "Paul" Mori (originally submitted in response to GAIC's summary judgment motion, Doc. No. 27-1), attached as Exhibit 1, ¶ 14) TPU not only has not, but cannot, assert a claim for passing off.

The TPU Action alleges only false advertising, and makes no claim of intellectual property infringement. GAIC owes JAR a duty to defend the TPU Action and has breached that duty.

### C. The Prior Publication Exclusion Does Not Bar Coverage.

GAIC contends that because some defamatory statements may have been made before the policy term, it is relieved of its duty to defend. However, GAIC's argument ignores the primary Seventh Circuit case on "prior publication" exclusions. In *Taco Bell Corp. v. Continental Cas. Co.*, 388 F.3d 1069 (7th Cir. 2004), the court explained that different wrongs within the policy period trigger the duty to defend, despite earlier similar wrongs:

> At some point a difference between the republished version of an unlawful work and the original version would be so slight as to be immaterial. See *Ringler Associates Inc. v. Maryland Casualty Co.,* 80 Cal.App.4th 1165, 1181, 96 Cal.Rptr.2d 136, 150 (2000);

7

> *Noyes Co. v. American Motorists Ins. Co.,* 855 F.Supp. 492, 495 (D.N.H.1994). But that observation cannot save the insurer when the republication contains new matter that the plaintiff in the liability suit against the insured alleges as fresh wrongs.

*Id.* at 1073. Here, JAR's allegedly wrongful conduct after December 1, 2012 differs both in substance and in scope from any occurring before the policy term.

TPU alleges that JAR's advertising in February 2012, within the policy term, included statements such as "That makes LidoPatch® considerably less than the prescription alternative (which, in most cases, is not covered by 3rd party carriers)" and that LidoPatch is "fast acting," which allegedly conveys the message that Lidopatch acts "as fast as if not more quickly than Lidoderm®." (App. 62-63, ¶ 20; App. 81-84, ¶¶ 23, 28) Those statements, allegedly suggesting that Lidoderm® was uneconomical and slower-acting were not among those alleged to have been made in June 2011. (App. 79, ¶ 19). TPU complains of different statements – "fresh wrongs" – following the December 2011 effective date of the primary policy, and under *Taco Bell,* the prior publication exclusion does not eliminate GAIC's duty to defend.

Furthermore, TPU's amended complaint is ambiguous as to whether any pre-December 2011 statements constitute "publication" within the scope of the exclusion. As the Illinois Supreme Court has explained,

> Webster's Third New International Dictionary defines "publication" as "communication (as of news or information) to the public," and alternatively, as "the act or process of issuing copies * * * for general distribution to the public." Webster's Third New International Dictionary 1836 (2002). Likewise, Black's Law Dictionary **\*367** defines "publication" as "[g]enerally, the act of declaring or announcing to the public" and, alternatively, as "[t]he offering or distribution of copies of a work to the public." Black's Law Dictionary 1264 (8th ed.2004).

8

*Valley Forge Ins. Co. v. Swiderski Electronics, Inc.*, 223 Ill.2d 352, 366-67, 860 N.E.2d 307, 316 (2006); *see also Integrated Genomics Inc. v. Gerngross*, 636 F.3d 853 (7th Cir. 2011)("publication" signifies disclosure to the public, rather than the disclosure of information to another within the context of a business relationship). Here, TPU's amended complaint alleges that independent sales representatives "contacted numerous potential customers" in June 2011; TPU's interrogatory responses, on the other hand, put the number closer to "a few." (App. 79, ¶ 19; App. 203-206) Accordingly, it is not clear from TPU's pleadings whether the June 2011 individualized contact alleged by TPU rises to the level of "publication." As TPU's complaint must be construed in JAR's favor, the Court must assume that that the June 2011 communications were not "publication." In contrast, TPU alleges that JAR's February 2012 statements were posted on the internet and distributed to 50 potential customers. (App. 61-63, ¶¶ 18-20; App. 80-84, ¶¶ 20 – 28)

The substance and nature of JAR's alleged statements in June 2011 and those in February 2012 are significantly different. In other words, TPU has alleged "fresh wrongs" to which the "prior publication" exclusion does not apply.

### D. The "Quality of Goods" Exclusion Does Not Bar Coverage.

GAIC contends that the allegedly false statements concern only the quality of JAR's own LidoPatch® product, and are excluded as claims arising from the failure of the product to conform with the statements made in JAR's advertising.

GAIC confuses injury caused by a product with injury caused by advertising. In *Safety Dynamics*, the court rejected the same argument, holding

that the injury claimed in the underlying action did not arise out of the failure of the insured's product to conform to its advertisements: "Rather, it is a competitive injury. This exception 'is directed to the failure of goods, not the failure of advertising.'" *Safety Dynamics, Inc.*, 475 Fed.Appx. at 213, 2012 WL 3066577 *1 (quoting 4 Jeffrey E. Thomas, New Appleman on Insurance Law Library Edition § 30.08[2][a] (2009)).

TPU acknowledges that JAR has not shipped any LidoPatch® products. (App. 76, ¶ 2) As there are not yet any goods that could fail to conform, there cannot be any injury "arising out of" any such failure. Instead, TPU alleges that its injury – damage to Lidoderm®'s goodwill – has been caused not by JAR's product, but by advertising implying that Lidoderm® is a pricey equivalent to the allegedly inferior LidoPatch® product. (App. 63, 65, ¶ 20, ¶ 29; App. 81-84, 86-87, 90-93, ¶¶ 23, 28, 38, 44, 57, 62, 67, 73) The advertising of which TPU complains is not limited to the qualities of JAR's product, but allegedly disparaged TPU's product. Therefore, there is still the potential for coverage, and GAIC owes JAR a duty to defend the TPU Action.

## **CONCLUSION**

For the foregoing reasons, JAR Laboratories LLC asks that the Court grant its motion for summary judgment.

        Respectfully submitted,

        /s/ Marianne C. Holzhall
        Annette M. McGarry (#6205751)
          amm@mcgarryllc.com
        Marianne C. Holzhall (#6204057)
          mch@mcgarryllc.com
        McGarry & McGarry, LLC
        120 North LaSalle Street, Suite 1100
        Chicago, IL 60602
        (312) 345-4600

        Attorneys for JAR Laboratories LLC